## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SEAN JOHN WALSH,

    Plaintiff,

      v.

ALEJANDRO MAYORKAS,[1] *et al.*,

    Defendants.

No. 20-cv-00509

Judge John F. Kness

## MEMORANDUM OPINION & ORDER

Plaintiff, a citizen of Ireland, filed this action after the United States Customs and Immigration Services (USCIS) denied his Form I-485 application for an adjustment of status (colloquially called a "green card"). Defendants Alejandro Mayorkas (the Secretary of the Department of Homeland Security) and Kevin Riddle (the Director of USCIS's Chicago Field Office) have moved to dismiss on the basis that Plaintiff failed both to exhaust his available administrative remedies and to show he was statutorily eligible for permanent resident status. Separately, because the Court questioned its jurisdiction over this matter, it requested and received supplemental briefing on that issue.

---

[1] Secretary Alejandro Mayorkas was automatically substituted for his predecessor, Chad Wolf, under Rule 25(d) of the Federal Rules of Civil Procedure.

Upon further review, the Court finds that it lacks jurisdiction to review the denial of Plaintiff's application. USCIS adjudicated Plaintiff's application under 8 U.S.C. § 1255; but the Immigration and Nationality Act (INA) prohibits courts from reviewing "any judgment[s] regarding the granting of relief under section . . . 1255 of this title[.]" 8 U.S.C. § 1252(a)(2)(B)(i). As the Supreme Court of the United States recently clarified in *Patel v. Garland*, that prohibition extends to "judgments 'of whatever kind' under § 1255, not just discretionary judgments or the last-in-time judgment." 142 S. Ct. 1614, 1622 (2022). As a result, the INA bars the Court from reviewing USCIS's denial of Plaintiff's adjustment of status.

Even if the Court had jurisdiction, Plaintiff has not plausibly alleged that he exhausted his available administrative remedies. If anything, Plaintiff's complaint suggests that he has *not* exhausted the remedies available to him under the laws and regulations governing immigration. Plaintiff's complaint is therefore premature in any event.

For these reasons, and as explained more fully below, the case is dismissed without prejudice for lack of jurisdiction. In the alternative, Defendant's motion to dismiss (Dkt. 16) is granted in part, as Plaintiff has not adequately established that he has exhausted all the administrative remedies available to him.

## I.    BACKGROUND

Thirteen years ago, Plaintiff Sean John Walsh, a "native and citizen" of Ireland, was apprehended by Customs and Border Protection (CBP) when a CBP officer "observed Plaintiff . . . crossing the border from Canada to the United States."

(Dkt. 1 ¶¶ 22–23 (under seal).) Plaintiff was released and given a Notice to Appear before the Immigration Court. (*Id.* ¶ 24.) That Notice (which is not attached to the complaint) was edited twice by the Department of Homeland Security, and, according to Plaintiff, the Notice charged that Plaintiff was an "arriving alien" who "entered without inspection or admission or parole." (*Id.* ¶¶ 26–27.) On March 14, 2012, an immigration judge terminated Plaintiff's removal proceedings so that Plaintiff could pursue an adjustment of status application (I-485). (*Id.* ¶ 29.)

At some point (it is not clear when), Plaintiff married a naturalized U.S. citizen. Plaintiff's new spouse then successfully sought a Form I-130 visa (Petition for Alien Relative). (*Id.* ¶ 30.) On March 7, 2019—seven years after the immigration judge terminated Plaintiff's removal proceedings—Plaintiff filed a Form I-485 application (which permits foreign nationals to pursue status adjustments under 8 U.S.C. § 1255) based on the approved I-130 application. (*Id.* ¶ 31.) On October 4, 2019, USCIS denied Plaintiff's application because he "failed to provide evidence [he was] either lawfully admitted or paroled into the United States" under the relevant provision of the INA. (Dkt. 1-1 at 5 (under seal).)

Concluding that he was "left with no basis to dispute the USCIS finding that he is ineligible for adjustment of status," Plaintiff sued Defendants Chad Wolf (then-Acting Secretary for the Department of Homeland Security) and Kevin Riddle (Field Office Director for the Chicago Field Office of the USCIS). Plaintiff asks the Court to: (1) "Declare that Plaintiff is eligible for adjustment of status"; (2) "Hold unlawful and set aside Defendants' decision [to deny Plaintiff an adjustment of status] as arbitrary,

capricious and/or otherwise not in accordance with the law;" and (3) "Order the Defendants to take corrective action, including but not limited to granting the adjustment of status application of Plaintiff[.]" (Dkt. 1 ¶ 33, at 8.)

Defendants have moved to dismiss Plaintiff's complaint. (Dkt. 16.) Defendants argue that Plaintiff has not adequately exhausted the administrative remedies available to him through the immigration administrative process and that, even if he has done so, Plaintiff "fail[s] to meet his burden to show he was statutorily eligible for permanent resident status." (Dkt. 17 at 1.) After briefing on the motion to dismiss was completed, the Court directed the parties to submit memoranda addressing the Court's jurisdiction over this matter. (Dkt. 22; *see* Dkts. 23, 24.)[2]

## II.    STANDARD OF REVIEW

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774,

---

[2] After the Supreme Court decided *Patel v. Garland*, 142 S. Ct. 1614 (2022), the parties supplemented their briefing with competing accounts of *Patel*'s effect on this case. (*See* Dkt. 33; Dkt. 37.)

777 (7th Cir. 2022). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the Plaintiff's favor. *Iqbal*, 556 U.S. at 678. Even though factual allegations are entitled to the assumption of truth, however, mere legal conclusions are not. *Id.* at 678−79.

## III. DISCUSSION

### A. Jurisdiction

Federal courts have the power to hear cases only if such power is granted by the Constitution and authorized by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have an "independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore must raise and decide jurisdictional questions." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2001).

Plaintiff alleges that the Court has jurisdiction under the INA as well as the Administrative Procedure Act (APA). (Dkt. 1 ¶ 3.)[3] Each of these asserted bases is addressed in turn.

#### 1. Jurisdiction under the 8 U.S.C. § 1252 (INA)

In general, courts lack jurisdiction to review denials of adjustments of status under Section 1255. Section 1252 explains that

> [n]otwithstanding any other provision of law (statutory or nonstatutory) . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any

---

[3] Plaintiff also cites the Declaratory Judgment Act, 28 U.S.C. § 2201, but that Act "does not confer independent jurisdiction." *Bunn v. Conley*, 309 F.3d 1002, 1009 (7th Cir. 2002).

judgment regarding the granting of relief under section . . . 1255 of this title[.] . . .

8 U.S.C. § 1252(a)(2)(B)(i).

Section 1252 controls the jurisdictional question in this case. In its recent *Patel* decision, the Supreme Court explained that Section 1252(a)(2)(B)(i) "prohibits review of *any* judgment *regarding* the granting of relief under § 1255 and the other enumerated provisions." *Patel*, 142 S. Ct. at 1622 (emphasis in original). Adhering to the statute's plain language, the Supreme Court stated that "[t]he provision does not restrict itself to certain kinds of decisions." *Id.* Instead, the Supreme Court found that

> "any" means that the provision applies to judgments "of whatever kind" under § 1255, not just discretionary judgments or the last-in-time judgment. Similarly, the use of "regarding" in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject. Thus, § 1252(a)(2)(B)(i) encompasses not just "the granting of relief" but also any judgment relating to the granting of relief.

*Id.* (cleaned up). Section 1252(a)(2)(B)(i), as clarified in *Patel*, bars this Court from reviewing the denial by USCIS of Plaintiff's request for an adjustment of status.

There is, to be sure, an exception to Section 1252's general bar on judicial review for cases that present constitutional or legal questions. Subsection (D) of Section 1252 provides that

> [n]othing in [the subsections limiting or barring judicial review] shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D).

Plaintiff cites to subsection (D) in arguing that this Court has jurisdiction to review the legal questions presented in his complaint. (*See* Dkt. 23 at 1.) But even assuming Plaintiff's complaint can be construed as a "petition for review,"[4] Plaintiff makes it only halfway home because he mistakenly conflates review by the "court of appeals" with review by any "court." As the language of the statute plainly states, the limited exception in subsection (D) allows a petition for review to be "filed with an appropriate court *of appeals*," 8 U.S.C. § 1252(a)(2)(D) (emphasis added). Plaintiff's action, of course, is presently before the district court, not the court of appeals. This distinction's importance is highlighted by the cases relied upon by Plaintiff (Dkt. 23), all of which involved petitions to the Court of Appeals for review of decisions by the Board of Immigration Appeals (BIA). *See Iglesias v. Mukasey*, 540 F.3d 528 (7th Cir. 2008); *Mireles v. Gonzales*, 433 F.3d 965 (7th Cir. 2006); *Cuellar Lopez v. Gonzales*, 427 F.3d 492 (7th Cir. 2005); *Morales-Morales v. Ashcroft*, 384 F.3d 418 (7th Cir. 2004).[5]

Addressing the language in subsection (D) quoted above, the Seventh Circuit has explained that a petitioner "may well be placed in removal proceedings, at the conclusion of which she may conceivably seek review in this court (*not the district court*)." *Holy Virgin Prot. Cathedral of the Russ. Orthodox Church Outside Russ. v.*

---

[4] A "petition for review" is "a challenge to an order of removal entered by the [Board of Immigration Appeals]." *Singh v. USCISC*, 878 F.3d 441, 445 (2d Cir. 2017); *cf. Hassan v. Chertoff*, 543 F.3d 564, 566 (9th Cir. 2008) (distinguishing a "petition for review" from a "direct appeal").

[5] Plaintiff also cites to *Rivera-Durmaz v. Chertoff*, but that case implicated different statutory provisions and, ultimately, the *Rivera-Durmaz* court dismissed the case for lack of jurisdiction. 456 F. Supp. 2d 943, 950, 953 (N.D. Ill. 2006).

*Chertoff*, 499 F.3d 658, 662 (7th Cir. 2007) (emphasis added); *see also Singh v. Reno*, 182 F.3d 504, 510 (7th Cir. 1999) (explaining that "exclusive responsibility for the prevention of miscarriages of justice now rests with the courts of appeals"). Other judges in this District have also questioned the appropriateness of district courts purporting to assume jurisdiction under § 1252. *See, e.g.*, *Nino v. Johnson*, 2016 WL 6995563, at *5 n.4 (N.D. Ill. Nov. 30, 2016) (St. Eve, J.) ("[I]t is not clear to the Court that it—as opposed to the appropriate Court of Appeals—would have the requisite jurisdiction.").[6]

Cases in other Circuits have similarly explained that Section 1252(a)(2)(D) "does not give [plaintiffs] a jurisdictional bootstrap into district court." *Lee v. USCIS*, 592 F.3d 612, 620 (4th Cir. 2010); *see Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009) (Section 1252(a)(2)(D) "does not grant jurisdiction to review questions of law in district court cases"); *Hassan*, 543 F.3d at 566 ("[T]he district court did not have jurisdiction to entertain [the plaintiff's] challenge to the denial of adjustment of status.").

In contrast, at least one decision at the federal appellate level suggests that a district court's adjudicative power under Section 1252 depends upon whether the challenged USCIS decision was discretionary or nondiscretionary. In *Mamigonian v. Biggs*, the Ninth Circuit held that district courts "have jurisdiction to hear cases

---

[6] Other subsections of § 1252 expressly provide for review by district courts in different circumstances. *See, e.g.*, 8 U.S.C. § 1252(b)(5)(B), (b)(7), (e)(3). The statutory scheme thus contemplates review by the courts of appeals in some cases and review by district courts in others; Plaintiff's suit falls, if anywhere, in the former category.

challenging determinations made on nondiscretionary grounds respecting eligibility for the immigration benefits enumerated in 8 U.S.C. § 1252(a)(2)(B)(i), provided there are no pending removal proceedings in which an alien could apply for such benefits." 710 F.3d 936, 938 (9th Cir. 2013).

*Mamigonian* does not compel a different result here. To begin, the plain language of Section 1252 appears at odds with the Ninth Circuit's holding in *Mamigonian*. *See* 8 U.S.C. § 1252(a)(2)(B)(i) (providing that "no court shall have jurisdiction to review . . . *any judgment* . . . .") (emphasis added). But even if *Mamigonian* is correct, it does not apply here by its own terms, because USCIS has taken steps to deport Plaintiff. (Dkt. 17-1 (Notice to Appear); *see* Dkt. 24 at 2 ("Walsh is currently in proceedings before the immigration judge.").)[7]

Plaintiff directs the Court (Dkt. 1 ¶ 6; Dkt. 23 at 2) to *Pinho v. Gonzales*, in which the Third Circuit held that a "determination of *eligibility* for adjustment of status—unlike the *granting* of adjustment itself—is a purely legal question" reviewable by a federal court. 432 F.3d 193, 204 (3d Cir. 2005) (emphasis in original). But *Pinho* is distinguishable for several reasons. First, as the Third Circuit noted, although *Pinho* began in the district court, "[n]either the parties nor the District Court questioned whether jurisdiction existed." *Id.* at 200. The court of appeals thus

---

[7] When subject-matter jurisdiction is disputed, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Miller v. F.D.I.C.*, 738 F.3d 836, 840 (7th Cir. 2013) (cleaned up). With their motion to dismiss, Defendants attached the "Notice to Appear" that the Department of Homeland Security (DHS) issued to Plaintiff, and which confirms that Plaintiff is "in removal proceedings." (Dkt. 17-1 at 3.)

considered that question "anew." *Id. Pinho* acknowledged that it was "inadvisable to speculate . . . about alternative jurisdictional avenues by which [Administrative Appeal Office] decisions might be reviewed" and explained that it would "await cases in which the parties contest jurisdiction and put the issues squarely before [it]." *Id.* at 204 n.13. Second, and relatedly, the Third Circuit focused on a question of administrative law (whether there had been a "final agency action" such that the petitioner was "entitled to judicial review" under the Administrative Procedure Act), *id.* at 204, not whether jurisdiction was precluded under 8 U.S.C. § 1252. Finally, *Pinho*'s holding concerning the finality of the administrative decision was premised, at least in part, on the fact that "there [we]re no deportation proceedings pending in which the [administrative] decision might be reopened or challenged." *Pinho*, 432 F.3d at 202. That circumstance does not exist in this case. For these reasons the Court holds that *Pinho* is inapposite to this case.

## 2. *Jurisdiction under 5 U.S.C. § 706 (APA)*

Plaintiff also seeks relief under the APA, 5 U.S.C. § 706(2), and asks that the Court "set aside Defendants' decision as arbitrary, capricious and/or otherwise not in accordance with the law." (Dkt. 1 at 8.)[8] But Plaintiff "cannot avoid the jurisdictional bar established by 8 U.S.C. § 1252 simply by raising a claim under that section of the APA." *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 574 (7th Cir. 2017). Section 1252, which explains that the bar on judicial review is "notwithstanding *any*

---

[8] Although the complaint cites to the APA, Plaintiff's memorandum in support of jurisdiction (Dkt. 23) does not refer to the APA, let alone explain how that law confers jurisdiction over Plaintiff's claims for relief.

*other provision of law (statutory or nonstatutory),*" 8 U.S.C. § 1252(a)(2) (emphasis added), contemplates and rejects alternative statutory bases of jurisdiction to review applications for adjustment of status.

Even if Section 1252 did not bar the Court from reviewing this case, the APA provides no independent basis for relief because USCIS's decision was not a "final agency action." Under the APA, judicial review of "final agency action for which there is no other adequate remedy in a court" is permissible. *Home Builders Ass'n of Greater Chi. v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 614 (7th Cir. 2003) (citations omitted); *see Menominee Indian Tribe of Wis. v. EPA*, 947 F.3d 1065, 1069 (7th Cir. 2020). An agency action "is not final if it is only the ruling of a subordinate official, or tentative." *Dhakal v. Sessions*, 895 F.3d 532, 539 (7th Cir. 2018) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)).

As the Seventh Circuit and other courts in this District have repeatedly held, the denial of an application to adjust immigration status is "not a final agency action where the applicant can seek the same adjustment in removal proceedings." *Sorocean v. Nielsen*, No. 18 C 4069, 2019 WL 1454530, at *2 (N.D. Ill. Apr. 2, 2019); *see, e.g.*, *McBrearty v. Perryman*, 212 F.3d 985, 987 (7th Cir. 2000) (explaining that the plaintiffs' "suit was premature" because "they could obtain review of the district director's decision by the Board of Immigration Appeals if and when the immigration service institutes removal (*i.e.,* deportation) proceedings against them"); *Massignani v. INS*, 438 F.2d 1276, 1277 (7th Cir. 1971) (per curiam) ("When deportation proceedings are commenced, plaintiff will have another opportunity to present her

application for permanent residence."); *Jablonski v. Holder*, 2014 WL 772946, at *1 (N.D. Ill. Jan. 27, 2014).

In *Pinho*, to which Plaintiff cites, the Third Circuit held that the Bureau of Immigration and Customs Enforcement's (BICE) denial of an immigrant's application for an adjustment of status was "final agency action" because the possibility that the immigrant could challenge that denial before an immigration judge was too remote. 432 F.3d at 200–01. As the court explained, if the agency "does not seek to deport the immigrant, there can never be an appeal within the agency by which any higher level of administrative authority can be invoked to review the legal determination made by the [agency]." *Id.* at 201. Setting aside whether *Pinho*'s holding can be squared with the binding Seventh Circuit precedent cited above, this case is different in any event because USCIS has taken steps to deport Plaintiff. (*See* Dkt. 17-1.)

Plaintiff will have an opportunity to adjudicate his adjustment-of-status application in his removal proceedings, *see* 8 C.F.R. § 1245.2(a)(1)(i), and, if unsuccessful there, before the Board of Immigration Appeals, *see id.* at § 1003.1(b)(3). But USCIS's denial is not "final agency action." As a result, this Court lacks jurisdiction under the APA.

\*    \*    \*

Plaintiff directs the Court to no other statutory basis for jurisdiction to review this matter. (*See generally* Dkt. 23.) Because this Court is barred from reviewing USCIS's denial of Plaintiff's adjustment of status, *see* 8 U.S.C. § 1252(a)(2)(B)(i); *Patel*, 142 S. Ct. at 1622, and because the APA does not provide an alternative basis

for jurisdiction, the Court lacks jurisdiction over this action. Accordingly, the Court dismisses the case without prejudice.

**B.     Exhaustion of Administrative Remedies**

Even if the Court had jurisdiction, Plaintiff has not adequately established that he has exhausted all the administrative remedies available to him. Although a plaintiff does not always need to allege the satisfaction of exhaustion to survive a motion to dismiss, *see, e.g.*, *Manley v. Sevier*, 746 F. App'x 594, 596 (7th Cir. 2019) (nonprecedential disposition), the Seventh Circuit has repeatedly "left to the trial court" the "decision to require exhaustion as a prerequisite to bringing suit." *Citadel Sec., LLC v. Chi. Bd. Options Exch., Inc.*, 808 F.3d 694, 698 (7th Cir. 2015) (quoting *Shawnee Trail Conservancy v. U.S. Dep't of Agric.*, 222 F.3d 383, 385 (7th Cir. 2000)); *see also Massey v. Helman*, 196 F.3d 727, 734 (7th Cir. 1999) (affirming dismissal of lawsuit based on "district court correctly [finding] that Massey failed to exhaust his administrative remedies"). Because the allegations of the complaint in this case suggest Plaintiff has not exhausted the administrative remedies available to him, that doctrine operates as an independent basis for dismissal.

The exhaustion doctrine "is one among related doctrines—including abstention, finality, and ripeness—that govern the timing of federal-court decisionmaking." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (citations omitted). In general, an immigration-case plaintiff is required to pursue and exhaust "all administrative remedies before seeking relief in federal court because there are explicit statutory requirements in certain sections of the INA and a comprehensive

administrative review scheme exists." *Iddir v. I.N.S.*, 301 F.3d 492, 498 (7th Cir. 2002). Where a plaintiff "fail[s] to exhaust his administrative remedies," a suit "is premature as the USCIS's denial of Plaintiff's Form I-485 is not yet a final agency action." *See Jablonski*, 2014 WL 772946, at *1.

Under the relevant statutory and regulatory provisions, in the case of any alien "who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file." 8 C.F.R. § 1245.2(a)(1)(i). If Plaintiff is unsuccessful before the immigration judge, he may appeal to the Board of Immigration Appeals, 8 C.F.R. § 1003.1(b), and then to the Court of Appeals, 8 U.S.C. § 1252(a).

Plaintiff argues that he is an "arriving alien" and, as such, a separate provision applies: "[i]n the case of an arriving alien who is placed in removal proceedings, the immigration judge does not have jurisdiction to adjudicate any application for adjustment of status filed by the arriving alien." *Id.* at § 1245.2(a)(1)(ii).[9]

An arriving alien is:

---

[9] The provision for "arriving aliens" contains an exception where four conditions are met: "(A) The alien properly filed the application for adjustment of status with USCIS while the arriving alien was in the United States; (B) The alien departed from and returned to the United States pursuant to the terms of a grant of advance parole to pursue the previously filed application for adjustment of status; (C) The application for adjustment of status was denied by USCIS; and (D) DHS placed the arriving alien in removal proceedings either upon the arriving alien's return to the United States pursuant to the grant of advance parole or after USCIS denied the application." 8 C.F.R. § 1245.2(a)(1)(ii). Plaintiff argues—and Defendant seemingly does not contest—that the exception does not apply because "Plaintiff has not departed the United States since he was last admitted to the United States on August 24, 2009." (Dkt. 20 at 4.)

> [1] an applicant for admission coming or attempting to come into the United States at a port-of-entry, or [2] an alien seeking transit through the United States at a port-of-entry, or [3] an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.

8 C.F.R. § 1001.1(q). Plaintiff alleges that, in a 2010 "charging document," he was "charged as an arriving alien pursuant to section 212(a)(7)(A)(i)(I) of the Act" (Dkt. 1 ¶ 27). Plaintiff also alleges that, "[o]n or about, March 14, 2012, the Immigration Judge terminated [Plaintiff's] removal proceedings for him to pursue his adjustment of status application before USCIS since he was classified as an arriving alien and paroled into the United States." (Dkt. 1 ¶ 29 (citing Dkt. 1-1).) But the order—which Plaintiff attaches as an exhibit—makes no reference to Plaintiff as an "arriving alien"; rather, the explicit reason for termination was so that Plaintiff's I-485 (adjustment of status application) could be adjudicated. (*See* Dkt. 1-1 at 2.)[10]

Plaintiff's barebones assertion that he fits the definition of "arriving alien" fails to raise a plausible inference that Plaintiff is, in fact, an arriving alien. *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement" (quoting *Iqbal*, 556 U.S. at 679)). If anything, the allegations in the complaint appear contrary to Plaintiff's assertion. That Plaintiff was detained after a CBP officer observed him trying to cross into the United States raises serious questions about

---

[10] Plaintiff's I-485 denial (*see* Dkt. 1-1 at 4–6) similarly makes no reference to his status as an "arriving alien." On the contrary, the denial notes that, at the time of filing the application, Plaintiff was "present in the United States contrary to the law." (*Id.* at 5.)

whether he is an "applicant for admission coming or attempting to come into the United States *at a port-of-entry*." 8 C.F.R. § 1001.1(q) (emphasis added). Even more ill-fitting are the other two definitions: Plaintiff has not alleged any intention to pass "through the United States" (even if Plaintiff's crossing was at a port-of-entry); and although Plaintiff *does* allege that he was interdicted, he does *not* allege that his interdiction was in "international waters." *Id.*

Other courts addressing this issue have found that applicants "d[id] not qualify as 'arriving aliens' under th[e] definition, [when] they were apprehended on land outside of the designated ports-of-entry." *Adrianza v. Trump*, 505 F. Supp. 3d 164, 181 (E.D.N.Y. 2020). So too for an applicant "apprehended by an agent who observed him wading the Rio Grande River into the United States." *Meza v. Renaud*, 9 F.4th 930, 932, 935 (D.C. Cir. 2021) (cleaned up). Those conclusions reflect the "longstanding principle[]" that "[a]n arriving alien is not 'present in the United States' " because "an alien arriving at a port of entry is 'to be regarded as stopped at the boundary line and kept there unless and until h[is] right to enter should be declared.' " *Id.* at 934 (quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925)).

Plaintiff's chief authority in support of his position is inapposite. In *Mamigonian*, the Ninth Circuit noted that the petitioner—who arrived at the Los Angeles International Airport and was paroled into the United States after "presenting a passport that was not her own" and being deemed "inadmissible"—was an "arriving alien" and was thus "precluded from submitting or renewing an application for adjustment of status before an [immigration judge] during removal

16

proceedings." 710 F.3d 936, 945 (9th Cir. 2013). But *Mamigonian*'s conclusion that the petitioner was an "arriving alien" was dicta (because the court ultimately affirmed the district court's dismissal of the petition), and the court did not address the categories outlined in the regulatory definition. In any case, it is not clear how to reconcile the definition of "arriving alien" in *Mamigonian* with that in more recent cases such as *Adrianza* and *Meza*; and the Court finds the latter cases more consistent with a plain reading of the regulatory definition.

At best, Plaintiff's complaint contains insufficient details to suggest plausibly that he is an "arriving alien." At worst—and as the allegations of Plaintiff's complaint strongly suggest—Plaintiff is *not* an arriving alien. Either way, Plaintiff has not sufficiently alleged—certainly not "above the speculative level," *Twombly*, 550 U.S. at 555—that he has exhausted the administrative remedies available to him. This failure constitutes an independent basis for granting Defendants' motion to dismiss.

## IV.   CONCLUSION

Because the Court finds that it lacks jurisdiction over this matter, the case is dismissed without prejudice. In the alternative, Defendant's motion to dismiss (Dkt. 16) is granted in part, as Plaintiff has not plausibly alleged that he exhausted all the administrative remedies available to him. In the light of these holdings, the Court does not address whether Plaintiff met his burden to show that he was statutorily eligible for permanent resident status.

SO ORDERED in 20-cv-00509.

Date: December 1, 2022

JOHN F. KNESS
United States District Judge